Filed 4/27/22  P. v. Hunter CA4/3

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | G060174 |
| v. | (Super. Ct. No. 95WF2035) |
| TREMAINE HUNTER, | O P I N I O N |
| Defendant and Appellant. | |

Appeal from a postjudgment order of the Superior Court of Orange County, Terri K. Flynn-Peister, Judge.  Reversed.

Joshua L. Siegel, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, Steve Oetting and Paige B. Hazard, Deputy Attorneys General, for Plaintiff and Respondent.

Tremaine Hunter appeals from the trial court's postjudgment order denying his Penal Code section 1170.95[1] petition. Hunter argues the court erred by denying his section 1170.95 petition without issuing an order to show cause and conducting an evidentiary hearing. We agree and reverse the postjudgment order.

FACTS

We adopt the facts from this court's prior nonpublished opinion *People v. Hunter* (Mar. 30, 2000, G023774).

"Scott Rezac was driving home around 9:20 at night when he saw someone approach a car and fire two or three fatal gunshots at the driver, Armando Carranza. Carranza's car was a brown 1981 Buick. Rezac could not identify the shooter, but described him as a Black or Hispanic man wearing black pants and sneakers. Carranza's Buick had been stopped at an intersection, and a black Pontiac was stopped behind it. Rezac described the cars as 'similar [in] body style.' Rezac saw the shooter come from the driver's side of the Pontiac's front fender area, crouch down, go to Carranza's window, and fire the shots.

"Sheriff's Deputy Brian Irish was dispatched at 9:20 p.m. to the scene of the shooting and arrived about two minutes later. A second witness, Pedro Perez, was there when Irish arrived. About five minutes after his arrival, Irish spoke to Perez, who was calm but appeared upset. Perez was shaking slightly, his eyes appeared wide and his face was drawn. As he spoke he stuttered. He told Irish a Black man pulled Carranza's body onto the pavement, got into Carranza's car, and drove away.

"Three days later, police found Carranza's Buick parked near Hunter's home. As police watched, Hunter arrived at the car with a second man, Damon Willis. Willis got into the passenger side, and Hunter began driving the Buick. Hunter and Willis are both African-American. Police searched the Buick and the home where Hunter

---

[1]        All further statutory references are to the Penal Code.

2

lived with his mother. They discovered bloodstains and a bloody cloth in the car. A pair of black jeans, a T-shirt and a pair of white and black athletic shoes were found in his residence. There were bloodstains on the shoes and clothing, which DNA tests showed could not have come from Hunter but might have come from Carranza.

"The night before the Carranza shooting, shortly before 10:00 p.m., Ashok Patel's black 1992 Pontiac Grand Am was taken from him by three African-American men. Patel testified one of the men told him he had a gun. Patel was unable to identify the men, but police found his car near Hunter's home.

"Hunter was interviewed by police three times. The conversations were tape recorded and played for the jury at trial. At first, Hunter denied all knowledge of the Patel carjacking and the Carranza shooting. Eventually, he admitted he and Willis were involved in carjacking Patel's Pontiac. During the final interview, Hunter told police Willis shot Carranza. He also stated Willis had borrowed black jeans and black and white Nike shoes from him. After Carranza was shot, Willis drove the Buick and Hunter drove the Pontiac from the scene. Eventually, they went together to Hunter's father's home. Hunter said he watched while Willis buried a shell casing from the shooting in a backyard at a Los Angeles address. Police recovered the casing in the location designated by Hunter. During a break in the police interviews, Hunter and Willis were left alone together. Their conversation was recorded, but the tape was in large part unintelligible. One part, however, was clear: Hunter said to Willis, 'They know we took the car, and there was blood on the seat.'"

A jury convicted Hunter of first degree murder (§ 187, subd. (a)) and second degree robbery (§§ 211, 212.5, subd. (b), 213, subd. (a)(2)). The jury found true the robbery special circumstance (§ 190.2, subd. (a)(17)(i)). The jury found not true personal and vicarious firearm enhancements. The court sentenced Hunter to 25 years to life in prison. In 2000, we affirmed Hunter's convictions. (*People v. Hunter, supra,* G023774.)

3

In January 2019, Hunter filed a section 1170.95 petition. After the trial court appointed counsel for Hunter, it denied his petition concluding Senate Bill No. 1437, the bill that enacted section 1170.95, was unconstitutional. We reversed the court's order and remanded the matter for further proceedings. (*People v. Hunter* (Nov. 12, 2020, G058570) [nonpub. opn.].)

After the parties filed additional briefing, the trial court again denied Hunter's section 1170.95 petition, this time concluding he did not make a prima facie case of eligibility. Based on the jury instructions and the verdicts, the court opined the jury concluded Hunter had an intent to kill. Acknowledging a split of authority on the issue, the court reasoned the meaning of "major participant" in *People v. Banks* (2015) 61 Cal.4th 788 (*Banks*), and "reckless indifference to human life" as stated in *People v. Clark* (2016) 63 Cal.4th 522 (*Clark*), did not undermine the jury's verdict post- or pre-*Banks* and *Clark*. (*People v. Allison* (2020) 55 Cal.App.5th 449, 458; but see *People v. York* (2020) 54 Cal.App.5th 250, 257-258, review granted Nov. 18, 2020, S264954.) Finally, the court concluded a section 1170.95 petition was not the proper vehicle to litigate the truth of the robbery special circumstance vis-à-vis *Clark* and *Banks*.

## DISCUSSION

Relying on this court's recent opinion in *People v. Gonzalez* (2021) 65 Cal.App.5th 420 (*Gonzalez*), review granted August 18, 2021, S269792, Hunter argues the trial court erred by denying his petition.[2] We agree.

"Under section 1170.95, if the petitioner makes a prima facie showing, the court must issue an OSC and, absent a waiver and stipulation by the parties, hold a hearing to determine whether to vacate the murder conviction, recall the sentence, and resentence the petitioner. (§ 1170.95, subds. (c) & (d)(1).) A prima facie showing under

---

[2] Our Supreme Court is currently considering this legal question in *People v. Strong* (Dec. 18, 2020, C091162) [nonpub. opn.], review granted March 10, 2021, S266606, and oral argument is imminent.

4

section 1170.95 requires the following: (1) an accusatory pleading was filed against the petitioner allowing the prosecution to proceed under a theory of felony murder or murder under the natural and probable consequences doctrine; (2) he or she was convicted of first or second degree murder following a trial, or accepted a plea offer to first or second degree murder in lieu of trial, at which he or she could have been so convicted; and (3) he or she could not be convicted of murder due to the amendments to sections 188 and 189. (§ 1170.95, subd. (a)(1)-(3).)" (*Gonzalez, supra,* 65 Cal.App.5th at p. 428.)

We face here the identical issue the *Gonzalez* court faced—does the felony-murder-robbery special circumstance make Hunter ineligible for section 1170.95 relief as a matter of law. This was the only basis upon which the jury could have concluded he had the intent to kill. The jury's verdicts on the firearm enhancements establish it concluded Hunter was not the shooter. The felony-murder special circumstance allegations required the jury to find Hunter acted with reckless indifference to human life and as a major participant in the robbery that resulted in Carranza's death (§ 190.2, subd. (a)(17)(A)).

In *Banks*, the Supreme Court identified the factors courts should consider in determining whether a defendant was a "major participant." (*Banks, supra,* 61 Cal.5th at p. 803.) The *Clark* court outlined considerations relevant to determining whether a defendant had acted with "reckless indifference to human life." (*Clark, supra,* 63 Cal.4th at pp. 529-532.)

In *Gonzalez*, we disagreed petitioner had to challenge the robbery special circumstance in a habeas corpus proceeding before filing a section 1170.95 petition because nothing in section 1170.95 required that. (*Gonzalez, supra,* 65 Cal.App.5th at p. 431.) We likewise reject the Attorney General's same claim here. As to the merits, the *Gonzalez* court stated the following: "Gonzalez's petition is made possible by changes to section 189, not because of the clarifications made in *Banks* and *Clark*. (See

5

§ 1170.95, subd. (a)(3) [allowing petition if '[t]he petitioner could not be convicted of first or second degree murder because of changes to Section 188 or 189 made effective January 1, 2019'].) Accordingly, Gonzalez properly challenged the underlying murder conviction pursuant to section 1170.95. Furthermore, as discussed below, any evidence supporting the robbery special circumstance finding has never been reviewed under the *Banks* and *Clark* standards. Because the trial court may not engage in factfinding at this early stage, any analysis under *Banks* and *Clark* was improper without first conducting an evidentiary hearing pursuant to section 1170.95, subdivision (d)." (*Ibid.*)

The trial court here did not have the benefit of *Gonzalez* when it ruled. We adopt the *Gonzalez* court's reasoning and conclude the trial court must issue an order to show cause and conduct an evidentiary hearing pursuant to section 1170.95, subdivision (d). We decline the Attorney General's invitation to engage in factfinding on appeal because section 1170.95, subdivision (d)(3), provides that a petitioner may meet his or her burden by offering new or additional evidence. (*People v. Smith* (2020) 49 Cal.App.5th 85, 96, review granted July 22, 2020, S262835.)

## DISPOSITION

The postjudgment order is reversed.


O'LEARY, P. J.

WE CONCUR:


BEDSWORTH, J.


SANCHEZ, J.